**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

**Case No. 9:19-CV-81133-Singhal/Matthewman**

LVI INTERMEDIATE HOLDINGS, INC.
d/b/a VISION GROUP HOLDINGS, THE
LASIK VISION INSTITUTE, LLC, and TLC
VISION CENTERS, LLC,

        *Plaintiffs,*

   v.

LCA-VISION INC. d/b/a LASIKPLUS,

        *Defendant.*

**PLAINTIFFS' MOTION FOR RELIEF TO REMEDY AND PREVENT**
**FURTHER WITNESS TAMPERING BY DEFENDANT LASIKPLUS**

Jennifer Ruiz (Bar No. 0967173)
Ingo Burghardt (Bar No. 1021393)
Alison Rogers (Bar No. 124498)
WEISBROD MATTEIS & COPLEY PLLC
500 E. Broward Blvd. Suite 1700
Fort Lauderdale, FL 33394
Tel: (954) 947-8607
jruiz@wmclaw.com
iburghardt@wmclaw.com
arogers@wmclaw.com

William E. Copley (*pro hac vice*)
Saul Cohen (*pro hac vice*)
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Ave. NW
Suite 600
Washington, D.C. 20036
Tel: (202) 499-7900
wcopley@wmclaw.com
scohen@wmclaw.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ii

TABLE OF AUTHORITIES ....................................................................................................iii

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

ARGUMENT ...........................................................................................................................6

      I.     LasikPlus's Threats Violate Florida Bar Rule 4-3.4(f). .........................................6

      II.    LasikPlus's Threats Violate the Well-Established Federal Public Policy
            that the Search for Truth Requires that Witnesses Be Free from
            Intimidation or Coercion. .....................................................................................8

      III.   LasikPlus Misplaces Reliance Upon Confidentiality to Justify Its Threats.............9

            A.    LasikPlus Has Abused the Concept of Confidentiality. .............................9

                 1.    LasikPlus Cannot Justify Designating as Confidential
                       Every Fact About Its Practices Regarding Patient Reviews. .........10

                 2.    LasikPlus, Through Its Threats to Dr. Goel, Circumvented
                       the Rules that Govern Discovery and Usurped This Court's
                       Authority. .......................................................................................11

            B.    LasikPlus Cannot Lawfully Use Non-Disclosure Agreements and
                 Confidentiality Provisions to Silence and Intimidate Witnesses. ..............13

            C.    Plaintiffs Are Entitled to Interview LasikPlus's Former Employees
                 About LasikPlus's Practices Regarding Patient Reviews..........................15

      IV.   The Relief Plaintiffs Seek Is Supported by Case Law and Tailored to
            Remedy LasikPlus's Wrongful Conduct..................................................................17

CONCLUSION........................................................................................................................20

LOCAL RULE 7.1(a)(3) CERTIFICATION .........................................................................20

CERTIFICATE OF SERVICE ...............................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Banner v. City of Flint,*
    99 F. App'x 29 (6th Cir. 2004) ................................................................. 19

*Chambers v. Capital Cities/ABC,*
    159 F.R.D. 441 (S.D.N.Y. 1995) ......................................................... 15, 18

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ............................................................................... 19

*Channelmark Corp. v. Destination Prods. Int'l, Inc.,*
    No. 99-C-214, 2000 WL 968818 (N.D. Ill. July 7, 2000) ......................... 13, 14, 18

*Chicago Tribune Co. v. Bridgestone/Firestone,*
    263 F.3d 1304 (11th Cir. 2001) .......................................................... 10, 12

*Davis v. Dow Corning Corp.,*
    530 N.W.2d 178 (Mich. Ct. App. 1995) ................................................ 7, 18

*Del Monte Fresh Produce B.V. v. Ace American Ins. Co.,*
    2002 WL 34702176 (S.D. Fla. Sept. 4, 2002) ...................................... 14, 17

*Doe v. Eli Lilly & Co.,*
    99 F.R.D. 126 (D.D.C. 1983) ............................................................. 14-15

*E.E.O.C. v. Astra U.S.A., Inc.,*
    94 F.3d 738 (1st Cir. 1996) ............................................................... 17-18

*EchoStar Satellite v. Viewtech Inc.,*
    No. 10-60069, 2010 WL 2822109 (S.D. Fla. 2010) ................................ 12-13

*Empire of Carolina, Inc. v. Mackle,*
    108 F.R.D. 323 (S.D. Fla. 1985) ............................................................ 12

*Farnsworth v. Proctor & Gamble Co.,*
    758 F.2d 1545 (11th Cir. 1985) ............................................................. 12

*Freedom Newspapers, Inc. v. Egly,*
    507 So.2d 1180 ................................................................................. 10

*Frey v. Department of Health and Human Services,*
    106 F.R.D. 32 (E.D.N.Y. 1985) ............................................................. 16

*General Steel Domestic Sales, LLC v. Steel Wise, LLC,*
    No. 07-cv-01145, 2009 WL 185614 (D. Colo. Jan. 23, 2009) ................... 14, 18

*Gregory v. United States,*
    369 F.2d 185 (D.C. Cir. 1966) .............................................................. 17

*Gutter v. E.I. DuPont de Nemours & Co.,*
    No. 95-2152, 2001 WL 36086590 (S.D. Fla. Jan. 31, 2001) ..................... 14, 17

*H.B.A. Management, Inc. v. Estate of Schwartz,*
    693 So.2d 541 (Fla. 1997) ................................................................... 16

*Haaf v. Flagler Constr. Equip., LLC*,
   No. 10-62321-CIV, 2011 WL 13217103 (S.D. Fla. Oct. 25, 2011) ...................................... 12

*Harlan v. Lewis*,
   982 F.2d 1255 (8th Cir. 1993) ........................................................................................ 7, 19

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ............................................................................................................. 8

*Hoffman v. Sbarro, Inc.*,
   No. 97 CIV. 4484 (SS), 1997 WL 736703 (S.D.N.Y. 1995)............................................ 15, 18

*Howard v. Second Chance Jai Alai LLC*,
   No. 5:15-cv-200, 2016 WL 367844 (M.D. Fla. Jan. 29, 2016) ............................................ 16

*IBM Corp. v. Edelstein*,
   526 F.2d 37 (2d Cir. 1975) ................................................................................................... 16

*In re Banco Santos, S.A.*,
   No. 10-47543, 2014 WL 5655025 ........................................................................................ 16

*In re Infant Formula Antitrust Litig.*,
   No. MDL 878, 1992 WL 503465 (N.D. Fla. 1992) .......................................................... 10, 16

*Jones v. Illinois Central Railroad Company*,
   *No. 07-2073 D/P*, 2011 WL 3862330 (W.D. Tenn. Aug. 14, 2011)..................................... 19

*Jones v. Illinois Central Railroad Company*,
   *No. 2:07-CV-2073*, 2011 WL 3862321 (W.D. Tenn. Aug. 31, 2011) .................................. 19

*Kalinauskas v. Wong*,
   151 F.R.D. 363 (D. Nev. 1993) ...................................................................................... 14, 18

*Klay v. All Defendants*,
   425 F.3d 977 (11th Cir. 2005) ............................................................................................... 8

*Lang v. Reedy Creek Imp. Dist.*,
   888 F. Supp. 1143 (M.D. Fla. 1995) ..................................................................................... 16

*Marchese v. Secretary, Dep't of the Interior*,
   2004 WL 2297465, at *6 (E.D. La. Oct. 12, 2004, 2004 WL 2297465 ................................ 18

*McGrane v. Reader's Digest Ass'n, Inc.*,
   822 F. Supp. 1044 (S.D.N.Y. 1993) ................................................................................ 15, 18

*McKnight v. Stein Mart*, Inc.,
   No. 95-0258, 1996 WL 481079 ................................................................................... 14-15, 18

*OKO International Co. v. Haurex Italy*,
   S.r.l, No. 12-60405-CIV, 2012 WL 12899041 ..................................................................... 12

*Piemonte v. United States*,
   367 U.S. 556, 559 n. 2 (1961) ............................................................................................... 8

*Pro v. Donatucci*,
   81 F.3d 1283 (3d Cir. 1996) ................................................................................................... 9

*Pro Video Instruments, LLC v. Thor Fiber, Inc.*,
   No. 618CV1823, 2019 WL 5296817 (M.D. Fla. Sept. 9, 2019) ........................................... 11

*Procaps S.A. v. Patheon Inc.*,
    No. 12-24356-CIV, 2015 WL 4430955 (S.D. Fla. July 20, 2015) ......................................... 11

*Reeves v. Claiborne Cty. Bd. of Educ.*,
    828 F.2d 1096, 1100 (5th Cir. 1987) ............................................................................... 9

*Scott v. Nelson*,
    697 So.2d 1300 (Fla. 1st DCA 1997) ...................................................................... 14, 17

*Terrebonne, Ltd.* of California *v. Murray*,
    1 F. Supp. 2d 1050 (E.D. Cal. 1998) ............................................................................ 19

*United States v. Calandra*,
    414 U.S. 338 (1974) .......................................................................................................... 8

*United States v. Mandujano*,
    425 U.S. 564, (1976) ......................................................................................................... 8

*Wendt v. Walden University, Inc.*,
    No. Civ. 4-95-467, 1996 WL 84668 (D. Minn. Jan. 16, 1996) ..................................... 14, 18

*Williams v. Rene*,
    72 F.3d 1096 (3d Cir. 1995) ........................................................................................ 17

*Wyndham Hotels & Resorts, LLC v. Leisure Getaways, Inc.*,
    No. 617CV501, 2017 WL 10059023 (M.D. Fla. Oct. 25, 2017) ................................... 10

## Statutes and Rules

18 U.S.C. § 1512(b) ........................................................................................................ 9, 13

28 U.S.C. § 1927 ............................................................................................................... 19

ABA Model Rule 3.4(f) ..................................................................................................... 7, 19

Federal Rule of Civil Procedure 26 ............................................................................... *passim*

Florida Bar Rule 4-3.4(f) ................................................................................................ *passim*

Southern District of Florida Local Rule 11(c) ..................................................................... 8

Southern District of Florida Local Rule 14 .......................................................................... 8

**INTRODUCTION**

Plaintiffs seek the Court's assistance to remedy an attempt by Defendant LCA-Vision Inc. d/b/a LasikPlus ("LasikPlus") to threaten and intimidate at least one witness in retaliation for ostensibly cooperating with Plaintiffs' investigation of the facts in this case. LasikPlus's threats violate Florida Rule of Professional Conduct 4-3.4(f). They also violate a uniform body of federal law establishing a strong public policy that litigation can be a search for truth only if witnesses are free from intimidation and coercion. LasikPlus's improper and unethical conduct has impeded Plaintiffs' ability to conduct discovery—both formal and informal—in this case.

Plaintiffs in their Rule 26 Initial Disclosures identified Dr. Sonny Goel as a potential witness with relevant knowledge of LasikPlus's illegal marketing practices. Based on nothing else, LasikPlus, through its counsel Jennifer Mitchell, threatened *in writing* to sue him for speaking with Plaintiffs about those practices. It accused him of violating confidentiality agreements. It threatened to sue him if he testified about "LasikPlus's practices regarding patient reviews." It threatened to seek liquidated damages. The thrust of LasikPlus's threat to Dr. Goel was clear—share any relevant evidence or information about this case, either in an informal interview or even in testimony, and LasikPlus will retaliate.

There is no legal justification for LasikPlus's threats to a witness. LasikPlus's threats violate Florida Bar Rule 4-3.4(f), which prohibits an attorney from asking, much less threatening, a potential witness not to share relevant information about a case with a party. LasikPlus's threats also violate the federal public policy that witnesses must be free from intimidation and coercion for trial to be a search for truth. It is axiomatic under federal case law that parties cannot silence witnesses through intimidation or by buying their silence in contracts.

Nor can LasikPlus justify its threats under the guise of protecting confidential information. Confidentiality concerns can justify a protective order that limits disclosure outside the context of litigation, but they do not justify silencing witnesses and suppressing relevant facts. A substantial body of federal cases prohibits parties from using confidentiality provisions in a contract to prevent witnesses from disclosing relevant facts, either informally or in testimony. Federal Rule of Civil Procedure 26(c) provides a legitimate way to protect information that is actually confidential by permitting a party to file a motion for a protective order. Parties are not permitted to usurp the Court's power under that rule to enforce their own unilateral (and pretextual) confidentiality designations by intimidating witnesses.

1

In this case, the sincerity of LasikPlus's invocation of confidentiality concerns is belied by its facially overbroad assertion that every potentially relevant fact Dr. Goel knows—literally everything about "LasikPlus's practices regarding patient reviews"—"is LCA's confidential information." That designation encompasses almost the entire universe of facts relevant to Plaintiffs' claims in this case—specifically, that LasikPlus violated the Lanham Act by paying undisclosed incentives for patients to post positive online reviews. LasikPlus indisputably defined the scope of its confidentiality designation by copying how Plaintiffs defined Dr. Goel's relevant knowledge in their Initial Disclosures rather than a good faith judgment about the scope of any trade secrets or other similar competitively sensitive information.

In short, Florida ethics rules and federal law prohibit LasikPlus's attempt to silence Dr. Goel through threats and intimidation. Plaintiffs file this motion to ask this Court to issue an order to cure at least some of the harm caused by LasikPlus's threats.

## FACTUAL BACKGROUND

This case involves a commercial dispute between the two largest provider networks of LASIK eye surgery in the United States. One of those networks, operated by LasikPlus, has profited handsomely by violating the advertising rules established by the Federal Trade Commission and the Lanham Act. Plaintiffs' core allegation is that LasikPlus violated the Lanham Act by providing undisclosed incentives to patients in a *quid pro quo* for positive online reviews. LasikPlus' illegal scheme has harmed Plaintiffs' business in more than 50 markets in which the parties compete, causing Plaintiffs to lose patients and millions of dollars of profits.

On January 6, 2020, Plaintiffs timely served Initial Disclosures upon LasikPlus.[1] Plaintiffs listed at least eight eye surgeons who once worked at LasikPlus as persons who are likely to have discoverable information about "LasikPlus's practices regarding patient reviews." *See* Ex. A at 2-3. At the very least, these doctors would have information about the incentives LasikPlus offered to customers for online reviews. One of these former LasikPlus doctors is Dr. Sonny Goel.

On January 9, 2020, three days later, Jennifer Mitchell, expressly in her capacity as LasikPlus's counsel, wrote to Dr. Goel through his attorney, Joy Einstein, threatening to sue him for significant monetary penalties ostensibly because he spoke with Plaintiffs' counsel about facts relevant to this case (the "January 9 Letter"). LasikPlus issued the following threat:

---

[1] A copy of Plaintiffs' Initial Disclosures is attached as Exhibit A.

It very recently came to our attention that Dr. Goel has violated these provisions [of his agreements with LasikPlus] and provided [LasikPlus's] confidential "business plans, strategic plans, marketing plan, and methods of doing business" to [counsel for Plaintiffs] and/or other individuals as one of my client's primary national competitors, namely Vision Group Holdings and its affiliates ("VGH"). Dr. Goel is obligated, both during and after the term of [Dr. Goel's prior employment agreement with LasikPlus], to protect and preserve the confidential and proprietary nature of all such confidential information and to not disclose such information to any other person or entity, and to not use such information to his advantage or to the advantage of any other person or entity. We were thus surprised to learn on January 6, 2020, that Dr. Goel was listed to testify as witness on behalf of VGH in litigation against my client as to "LasikPlus's practices regarding patient reviews." All such information known by Dr. Goel based on his prior long-standing affiliation with LCA is LCA's confidential information and Dr. Goel's disclosure of any such business, strategic and marketing plans and methods of doing business, constitutes a violation of Paragraph 9.1 of [Dr. Goel's former employment agreement with LasikPlus], entitling LCA to liquidated damages and such other relief from the Court as may be ordered.

\* \* \*

I am hopeful that these matters can be resolved expeditiously and to the satisfaction of my clients so that they do not have to exercise their rights under Section L of the Settlement Agreement, which provides the prevailing party attorney's fees and renders the release of Dr. Goel by my clients null and void.

Jan. 9 Letter at 4.[2]  The agreements that LasikPlus cites contain language stating that Dr. Goel will be liable for a contractual penalty in the amount of $100,000 if he breaches the provisions. *See* Ex. C at 10-11.[3]  There are four aspects of LasikPlus's threat that warrant special discussion.

First, the sole trigger for LasikPlus's threat was that Plaintiffs identified Dr. Goel as a potential witness on their Rule 26(a) Initial Disclosures.[4]  Although LasikPlus's threat does not mention those Initial Disclosures by name, it states that "[w]e were thus surprised to learn on January 6, 2020, that Dr. Goel was listed to testify as witness on behalf of VGH in litigation against my client as to 'LasikPlus's practices regarding patient reviews.'"  Jan. 9 Letter at 4. Plaintiffs served their Initial Disclosures on January 6, 2020, and in those disclosures they

---

[2] A copy of LasikPlus's January 9 Letter is attached as Exhibit B.

[3] Copies of the settlement and employment agreements that LasikPlus relies upon as a basis for its threats to Dr. Goel, as redacted by LasikPlus, are attached as Exhibit C.

[4] Counsel for LasikPlus could not have performed a reasonable investigation before issuing this threat to Dr. Goel. The undersigned counsel who represent Plaintiffs in this case have not spoken to Dr. Goel. They listed Dr. Goel in Plaintiffs' Initial Disclosures based on his employment with LasikPlus during the time period of the unlawful advertising practices.

described Dr. Goel's relevant knowledge as "LasikPlus's practices regarding patient reviews." Ex. A at 2.  Tellingly, LasikPlus cites no other evidence that Dr. Goel spoke with counsel for Plaintiffs in this case.

Second, LasikPlus asserts that Dr. Goel already "has violated" his confidentiality obligations, and thus he ostensibly is at LasikPlus's mercy as to whether it will sue him to seek $100,000 in damages.  Jan. 9 Letter at 4.  Although the letter is couched in terms of past violations, LasikPlus's primary message is forward looking—LasikPlus will punish him if he discloses or testifies about LasikPlus's practices regarding customer reviews.  There is no other reasonable interpretation of LasikPlus's closing statement that "I am hopeful that these matters can be resolved expeditiously and to the satisfaction of my clients so that they do not have to exercise their rights under Section L of the Settlement Agreement."  *Id.*

Third, although LasikPlus couches its threats in the guise of confidentiality, it defines confidentiality so broadly as to encompass every relevant fact Dr. Goel knows about the conduct at issue in this case.  LasikPlus states that "[a]ll such information known by Dr. Goel" about "LasikPlus's practices regarding patient reviews" is "LCA's confidential information."  *Id.*

Fourth, LasikPlus did not merely threaten Dr. Goel for purportedly speaking voluntarily to Plaintiffs' counsel.  LasikPlus expressly threatened to retaliate against Dr. Goel if he *testifies*.

> We were thus surprised to learn on January 6, 2020, that Dr. Goel was listed to *testify as a witness* on behalf of VGH in litigation against my client as to "LasikPlus's practices regarding patient reviews."  All such information … is LCA's confidential information and Dr. Goel's disclosure … constitutes a violation of Paragraph 9.1 of [Dr. Goel's former employment agreement with LasikPlus], entitling LCA to liquidated damages.

*Id.* (emphasis added).  Lasikplus expressly threatens that if Dr. Goel "testif[ies] as a witness" regarding "LasikPlus's practices regarding patient reviews," LasikPlus will deem that disclosure to be a violation of a confidentiality provision in his former employment agreement.  *Id.*  Since receiving the letter, Dr. Goel understandably has been unwilling to communicate with counsel for Plaintiffs.  In short, LasikPlus's threats worked.

After learning about LasikPlus's threats against Dr. Goel, Plaintiffs tried to obtain a copy of the January 9 Letter.  Plaintiffs served a subpoena on Dr. Goel through his attorney in an effort to obtain a copy of the letter without subjecting Dr. Goel to further retaliation by LasikPlus.  LasikPlus objected to Plaintiffs' subpoena, arguing that LasikPlus' witness

interference was not relevant in this case and that the letter was confidential.  Thus LasikPlus not only wanted to threaten Dr. Goel into silence, but also to hide its threat.

After Plaintiffs explained that witness intimidation is always relevant in a case, and that a letter sent to Dr. Goel's counsel could not be confidential to LasikPlus so as to prevent its disclosure in discovery, LasikPlus acquiesced and agreed to provide a copy of the January 9 Letter to counsel for Plaintiffs, but only if counsel agreed to treat the letter as "attorneys' eyes only."[5]  Similarly, LasikPlus only would provide a copy of the agreements it referenced in the letter subject to the same restriction.  Ex. D at 1-2.  Plaintiffs expressly reserved the right to challenge LasikPlus's designation of these materials as "attorneys' eyes only" before this Court. *Id.*  Plaintiffs subsequently learned that LasikPlus filed the January 9 Letter, and its agreements with Dr. Goel with only minor redactions, on a public docket.  *See LCA-Vision, Inc. v. Goel*, No. 19-cv-818 (N.D. Ohio), ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-12, 30-1, 30-4.

As part of Plaintiffs' efforts to fulfill their meet-and-confer obligation, Plaintiffs sent an email to LasikPlus asking it to agree to the relief Plaintiffs seek in this motion.[6]  The General Counsel for the law firm that represents LasikPlus responded, stating that Ms. Mitchell had done nothing wrong.[7]  He also produced a follow-up letter Ms. Mitchell sent to Dr. Goel after Plaintiffs inquired about LasikPlus's threats, which he asserted cured any impropriety.  Ex. F at 4-5.  That letter states:

> Finally, in reviewing my letter of January 9, 2020, I acknowledge that I concluded from VGH's disclosure of Dr. Goel as a witness regarding "LasikPlus's practices regarding patient reviews" that he had already disclosed information to VGH that my client would consider confidential and proprietary and which Dr. Goel has agreed to keep confidential. Though you did not deny it, perhaps my letter could have been clearer on that point.  However, never did I—nor would I—state or "make the (not-so-veiled) threat" that if Dr. Goel acted as a witness, my client would file a motion to enforce the Settlement Agreement against him, as you suggest in your letter.  I stated that my client will enforce its contractual rights and that Dr. Goel "is obligated … to protect and preserve the confidential and

---

[5] *See* email from Jennifer Mitchell, counsel for LasikPlus, to William Copley, counsel for Plaintiffs, regarding subpoena to Dr. Goel (Jan. 29, 2020, 2:43 p.m.), attached as Exhibit D.
[6] *See* email from William Copley, counsel for Plaintiffs, to Jennifer Mitchell, counsel for LasikPlus, regarding Plaintiffs' potential motion for curative relief regarding LasikPlus's January 9, 2020 letter to Dr. Goel (Mar. 5, 2020 5:45 p.m.) at 2-4, attached as Exhibit E.
[7] *See* letter from Brian S. Sullivan, general counsel for Dinsmore & Shohl LLP, to William Copley, counsel for Plaintiffs (Mar. 10, 2020), attached as Exhibit F.

> proprietary nature of all such confidential information and to not disclose such information to any other person or entity." To avoid any further confusion, I neither stated nor implied, then or now, that Dr. Goel cannot or should not testify truthfully about *non-confidential LasikPlus matters* in the VGH litigation in Florida, Ohio, or any other matter.

*Id.*(emphasis added).

This follow-up letter cures nothing. It does not withdraw or narrow LasikPlus's designation of "all such information" that Dr. Goel knows about "LasikPlus's practices regarding patient reviews" as confidential. Jan. 9 Letter at 4. It does not withdraw LasikPlus's threat to sue Dr. Goel if he discloses any "such information" in an informal interview or testimony. *Id.* At most, it conveys that LasikPlus will not retaliate against Dr. Goel if he testifies about "non-confidential topics"—*i.e.*, topics other than "LasikPlus's practices regarding patient reviews." *See id.* If it has any relevant effect, it implicitly reiterates that LasikPlus will sue him if he testifies about "confidential topics" including "LasikPlus's practices regarding patient reviews."

Plaintiffs seek this Court's assistance to end LasikPlus's unlawful and unethical witness intimidation and discovery obstruction. Plaintiffs have tried to contact other former LasikPlus physicians named in their Initial Disclosures. At least six of them are represented by the same attorney, who has told Plaintiffs that the physicians will not speak to Plaintiffs for fear of how aggressively LasikPlus enforces confidentiality obligations. Plaintiffs have not been able to determine whether LasikPlus has threatened them or other potential witnesses into silence.

## ARGUMENT

### I.    LasikPlus's Threats Violate Florida Bar Rule 4-3.4(f).

Dr. Goel is a potential witness in this case. He is an eye surgeon who formerly was affiliated with LasikPlus while it engaged in the false advertising conduct that is the subject of this case. He therefore likely has information about how LasikPlus solicited and incentivized patients to post online reviews. Those practices are at the heart of this case. The threats that LasikPlus made to Dr. Goel violate Florida Bar Rule 4-3.4(f), which provides:

> A lawyer must not … request a person other than a client to refrain from voluntarily giving relevant information to another party unless the person is a relative or an employee or other agent of a client, and it is reasonable to believe that the person's interests will not be adversely affected by refraining from giving such information.

LasikPlus did not merely "request" that Dr. Goel refrain from giving relevant information to Plaintiffs' counsel. It threatened to sue him. Jan. 9 Letter at 4. It accused him of violating his

employment agreement, and thus triggering penalties of $100,000.  *Id*; *see also* Ex. C at 10-11. It stated that it would decide whether to pursue those penalties based on whether Dr. Goel testified about "LasikPlus's practices regarding patient reviews," and whether "these matters can be resolved expeditiously and to the satisfaction of my clients so that they do not have to exercise their rights under Section L of the Settlement Agreement."  Jan. 9 Letter at 4.

LasikPlus cannot rely upon the exception in Rule 4-3.4(f) for when a witness "is a relative or an employee or other agent of a client."  LasikPlus is not a natural person, and thus Dr. Goel is not its relative.  Dr. Goel also had long since ceased to be LasikPlus's employee or agent.  Indeed, the January 9 Letter itself notes that he has been LasikPlus's litigation adversary. Jan. 9 Letter at 4.  It is not clear whether LasikPlus also has threatened other potential witnesses. Several other witnesses who formerly worked for LasikPlus are refusing to speak voluntarily to counsel for Plaintiffs based on a stated fear that LasikPlus will retaliate.

Although Florida courts do not appear to have applied Florida Bar Rule 4-3.4(f) to similar circumstances, that rule is based on ABA Model Rule 3.4(f), and courts have held that substantially less egregious conduct violates the same rule as adopted in other states. For example, the Eighth Circuit in *Harlan v. Lewis* affirmed the imposition of monetary sanctions against a defense attorney in a medical malpractice case who violated "Model Rule 3.4(f)" by asking a doctor not to speak with the plaintiffs' counsel:

> The district court found that during each conversation [the sanctioned defense attorney] attempted to dissuade the doctor from giving testimony or otherwise cooperating with the [plaintiffs].  While there may be reasonable alternative interpretations of the conversations, the district court did not abuse its discretion in concluding that [the defense attorney] had attempted to convince witnesses to refrain from "voluntarily giving relevant information" to the [plaintiffs].

982 F.2d 1255, 1259 (8th Cir. 1993).

The Michigan Court of Appeals similarly held that counsel for plaintiffs in breast implant litigation violated the same rule when he sent an open letter to the plaintiffs' treating physicians requesting that they refuse to speak with defense counsel unless plaintiffs' counsel was present. *Davis v. Dow Corning Corp.*, 530 N.W.2d 178 (Mich. Ct. App. 1995).  The attorney's letter was a request rather than a threat.  Nevertheless, the court held that "the conduct of plaintiffs' counsel in issuing a press release and an open letter to the treating physicians was in violation of MRPC

3.4(f), which prohibits an attorney from asking a person other than a client to refrain from voluntarily providing relevant information to another party." *Id.* at 181.

There also can be no dispute that Florida Bar Rule 4-3.4(f) applies to the activities of LasikPlus's counsel.  Ms. Mitchell became subject to the Florida Bar Rules when she sought admission *pro hac vice* in this case.  ECF No. 30.[8]  This Court's Local Rule 14 states:

> Whenever an attorney applies to be admitted or is admitted to this Court for purposes of a particular proceeding (pro hac vice), the attorney shall be deemed thereby to have conferred disciplinary jurisdiction upon this Court for any alleged misconduct arising in the course of or in the preparation for such proceeding which is a violation of this Court's Local Rules and/or the Rules of Professional Conduct adopted by this Court as provided in these Rules.

This Court adopted Florida's Rules of Professional Conduct in Local Rule 11.1(c), which states that "[t]he standard of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar."

## II.     LasikPlus's Threats Violate the Well-Established Federal Public Policy that the Search for Truth Requires that Witnesses Be Free from Intimidation or Coercion.

Litigation is a "search for truth." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  It should not "be carried on in the dark." *Id.* at 501.  This search for truth requires "the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Id.*  LasikPlus's threats deny Plaintiffs knowledge of "LasikPlus's practices regarding patient reviews." Jan. 9 Letter at 4.

To aid the search for truth, federal courts and Congress have recognized corresponding duties between witnesses (to testify truthfully) and society (to protect witnesses from retaliation). "Every citizen ... owes to his society the duty of giving testimony to aid in the enforcement of the law." *Piemonte v. United States*, 367 U.S. 556, 559 n. 2 (1961).[9]  There is a "fundamental responsibility of every person to give testimony," and the duty to provide evidence "has long been considered to be almost absolute." *Klay v. All Defendants*, 425 F.3d 977, 986 (11th Cir. 2005).  Society likewise owes a corresponding duty to protect witnesses from retaliation.

---

[8] Ms. Mitchell's home jurisdiction is Ohio.  Ohio has refused to adopt a provision similar to Florida Bar Rule 4-3.4(f).  *See* Ohio Rule of Professional Conduct 3.4.

[9] *See also United States v. Mandujano*, 425 U.S. 564, 576, (1976) (holding that "the duty to give testimony" is an "obligation imposed upon all citizens"); *United States v. Calandra*, 414 U.S. 338, 345 (1974) ("The duty to testify has long been recognized as a basic obligation that every citizen owes his Government.").

8

> An individual's fear of official retribution could inhibit the willingness of
> the witness to testify truthfully.  Not only would the first amendment right
> of the witness be infringed by this type of coercion, the judicial interest in
> attempting to resolve disputes by arriving at the truth would be in jeopardy.
> Furthermore, a witness who succumbed to any real or imagined coercion
> could also be subject to a charge of perjury.  Of course, it is the duty of
> every person to testify truthfully before a duly constituted tribunal....  Yet,
> '[t]hese values, along with the first amendment values, would not be served'
> if the fear of retaliation and reprisal 'effectively muzzled' witnesses
> testifying in open court.

*Pro v. Donatucci*, 81 F.3d 1283, 1290 (3d Cir. 1996) (quoting *Reeves v. Claiborne Cty. Bd. of Educ.*, 828 F.2d 1096, 1100 (5th Cir. 1987)).  Although witness intimidation is more common in criminal cases, "these principles lead to no meaningful distinction between testimony in a criminal proceeding and testimony in a civil proceeding."  *Id.*; *Reeves*, 828 F.2d at 1100.

Congress likewise has enacted laws to protect witnesses from threats and intimidation. 18 U.S.C. § 1512(b) prohibits any person from "knowingly us[ing] intimidation, threaten[ing], or corruptly persuad[ing] another person ... with intent to— ... (2) cause or induce any person to— (A) withhold testimony ... from an official proceeding."  This statute reinforces that witnesses must be free from intimidation for litigation to be an effective search for truth.

### III.   LasikPlus Misplaces Reliance Upon Confidentiality to Justify Its Threats.

LasikPlus's purported confidentiality concerns give it no legal basis to threaten Dr. Goel. LasikPlus's designation of every fact about "LasikPlus's practices regarding patient reviews" as confidential, and its accompanying threat to sue him if he discloses or testifies about such facts, is improper and unethical.  Confidentiality concerns justify moving for a protective order, not threatening a witness and obstructing discovery and trial testimony.  There is no exception to Florida Bar Rule 4-3.4(f), Federal Procedure 26(c), or the federal policy in favor of discovery that allows a party to arrogate to itself the power to silence a witness with threats.

#### A.   LasikPlus Has Abused the Concept of Confidentiality.

LasikPlus's invocation of purported confidentiality concerns to justify threatening Dr. Goel, and its purportedly curative clarification that Dr. Goel may testify about non-confidential matters, are sophistry.  LasikPlus has no good faith basis to designate as confidential everything Dr. Goel knows about "LasikPlus's practices regarding customer reviews."  *See* Jan. 9 Letter at 4. The designation is designed to obstruct.  It is overbroad on its face.  LasikPlus indisputably copied Plaintiffs' description in their Initial Disclosures of Dr. Goel's relevant knowledge, and

then used the same description to define the bounds of its confidentiality designation. The relevant Federal Rules of Civil Procedure, and federal cases applying them, make clear that designations of confidentiality should be limited to trade secrets and other similar competitively sensitive material. Even if confidentiality could be a defense of LasikPlus's improper threats (it is not), LasikPlus could not justify its claims of confidentiality in this case.

> 1.   **LasikPlus Cannot Justify Designating as Confidential Every Fact About Its Practices Regarding Patient Reviews.**

Federal Rules of Civil Procedure 26(c)(7) and 45(d)(3) describe the kind of information that could warrant protection as confidential. They authorize a court (not a party) to impose restrictions when the information sought qualifies as a "trade secret or other confidential research, development, or commercial information." When the Eleventh Circuit considered whether certain engineering information warranted protection in *Chicago Tribune Co. v. Bridgestone/Firestone*, it held that "[t]he first question that must be addressed on remand is whether Firestone's presumptively confidential documents do in fact contain trade secrets." 263 F.3d 1304, 1313 (11th Cir. 2001); *see also Freedom Newspapers, Inc. v. Egly*, 507 So.2d 1180, 1184 (Fla. Ct. App. 1987) (refusing to protect information that "is not in and of itself a trade secret"). District courts set a high bar for what kinds of information can qualify as confidential.

> Discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings. Under the Federal Rules of Civil Procedure, a compelling reason to designate materials "confidential" exists if the materials are shown to be "a trade secret or other confidential research, development, or commercial information.…" Fed. R. Civ. P. 26(c)(7). Only those materials that, if disclosed, would cause "a clearly defined and very serious injury" merit such protection.

*In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *7 (N.D. Fla. 1992) (citation omitted).

Additionally, Rule 26(c) requires the party asserting confidentiality to demonstrate "good cause" for a protective order. Federal courts reject blanket and conclusory confidentiality designations like the one LasikPlus asserts in its threat to Dr. Goel. "[G]eneralized concerns, conclusory statements, or unsupported contentions are insufficient reasons for entry of a protective order." *Wyndham Hotels & Resorts, LLC v. Leisure Getaways, Inc.*, No. 617CV501, 2017 WL 10059023, at *4 (M.D. Fla. Oct. 25, 2017). Applying this rule, the *Wyndham* court rejected a party's assertion of confidentiality that was supported by an affidavit, because:

> The Affidavit, however, provides no specific facts as to which documents
> contain such information; why such information is confidential; what is
> done to keep such information confidential; whether such information has
> not been made available to others without restriction; and the specific harm
> that would occur from a loss of confidentiality.

*Id.*[10]  Viewed in the context of these rules, LasikPlus's designation as confidential everything
Dr. Goel knows about "LasikPlus's practices regarding patient reviews" is precisely the kind of
conclusory statement that courts reject.  Moreover, much of the information LasikPlus seeks to
suppress from discovery and testimony plainly is not confidential.  Patient reviews are designed
to be read by the public.  LasikPlus's practices regarding those reviews included communications
to patients (*i.e.* members of the public) that cannot be confidential.  The thoughtless overbreadth
of LasikPlus's designation strongly indicates a lack of good faith.

This conclusion is supported by LasikPlus's abuse of confidentiality in its limited
production of documents so far in this case.  LasikPlus designated as "attorneys' eyes only" its
January 9 Letter and the supporting agreements between LasikPlus and Dr. Goel, so that
Plaintiffs' counsel could not share them with their clients.  Remarkably, LasikPlus already had
publicly filed many of these documents in another case when LasikPlus produced them to
Plaintiffs with bogus confidentiality designations.  *See LCA-Vision, Inc. et al. v. Goel et al.*, No.
19-cv-818 (N.D. Ohio), ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-12.  And LasikPlus filed publicly the
January 9 Letter and its settlement agreement with Dr. Goel shortly thereafter.  *See id.*, ECF Nos.
30-1, 30-4.  Thus, LasikPlus has filed publicly *every single document* that it produced to
Plaintiffs with an "attorneys' eyes only" designation.[11]

### 2.  LasikPlus, Through Its Threats to Dr. Goel, Circumvented the Rules that Govern Discovery and Usurped This Court's Authority.

As noted above, Federal Rule of Civil Procedure 26(c) provides the sole legitimate means
for LasikPlus to protect actually confidential information.  As the Eleventh Circuit explained:

> Rule 26(c) permits a court upon motion of a party to make a protective
> order requiring "that a trade secret or other confidential research,
> development or commercial information not be revealed or be revealed only

---

[10] *See also Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 4430955, at *6 (S.D. Fla.
July 20, 2015) (holding that a party designating materials as confidential "must describe the
alleged harm it will suffer from any disclosure 'with a particular and specific demonstration of
fact, as distinguished from stereotyped and conclusory statements.'"); *Pro Video Instruments,
LLC v. Thor Fiber, Inc.*, No. 618CV1823, 2019 WL 5296817, at *3 (M.D. Fla. Sept. 9, 2019).
[11] Plaintiffs asked LasikPlus to de-designate the documents it filed publicly, and it acquiesced.

> in a designated way." Fed. R. Civ. P. 26(c)(7).  The prerequisite is a
> showing of "good cause" made by the party seeking protection.  *See id.*
> Federal Courts have superimposed a balancing of interests approach for
> Rule 26's good cause requirement.  This standard requires the district court
> to balance the party's interest in obtaining access against the other party's
> interest in keeping the information confidential.

*Chicago Tribune*, 263 F.3d at 1313.  Threatening witnesses is not a legitimate alternative.  In this case, LasikPlus did not seek a protective order.  It did not show "good cause."  It did not, as Rule 26(c) requires, "in good faith … confer with other affected parties" (*i.e.* Plaintiffs) before sending the January 9 Letter.  Instead, it obtained the relief it wanted by intimidating Dr. Goel.

As Rule 26 makes clear, information is not excluded from discovery merely because a party labels it confidential.  Yet that is precisely the standard LasikPlus imposed when it threatened Dr. Goel into silence.  "The law's basic presumption is that the public is entitled to every person's evidence ... [and] [t]he Federal Rules of Civil Procedure strongly favor full discovery whenever possible."  *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1546-47 (11th Cir. 1985).  Even if LasikPlus could establish that all facts regarding its "practices regarding patient reviews" legitimately are confidential, Rule 26 requires this Court to balance Plaintiffs' need for that information against LasikPlus's interest in keeping the information confidential.  *See Chicago Tribune*, 263 F.3d at 1313.  Even actual trade secrets must be produced when they are centrally relevant to a litigation, as is often the case in trade secret, patent, and antitrust cases.  "Discovery may be denied if proof of relevancy or need is not established, but if relevancy and need are shown, the trade secret should be disclosed."  *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985).[12]

In this case, Plaintiffs have a substantial need for information about "LasikPlus's practices regarding patient reviews."  Jan. 9 Letter at 4.  The gravamen of Plaintiffs' complaint is that LasikPlus violated the false advertising provisions of the Lanham Act by paying undisclosed incentives to patients for reviews on social media websites, and also by publicizing those reviews as "unsolicited."  *See generally* Compl. [ECF No. 1].  Even if LasikPlus could establish that every fact about such practices is confidential—which it cannot—it still could not justify barring discovery regarding those practices, much less threatening to sue a witness if he testifies about

---

[12] *See also OKO Int'l Co. v. Haurex Italy, S.r.l*, No. 12-60405-CIV, 2012 WL 12899041, at *2 (S.D. Fla. Dec. 11, 2012) (quoting *Empire of Carolina*); *Haaf v. Flagler Constr. Equip., LLC*, No. 10-62321-CIV, 2011 WL 13217103, at *2 (S.D. Fla. Oct. 25, 2011) (same).

those practices.  Where, as here, "the Plaintiffs have a substantial need for the requested information, … the Court may direct that the production be made pursuant to certain conditions to protect the non-parties' interests." *EchoStar Satellite v. Viewtech Inc.*, No. 10-60069, 2010 WL 2822109, at *6 (S.D. Fla. 2010) (directing production of purportedly confidential information from a third party).

### B.      LasikPlus Cannot Lawfully Use Non-Disclosure Agreements and Confidentiality Provisions to Silence and Intimidate Witnesses.

In its January 9 Letter and conferral correspondence with Plaintiffs, LasikPlus invokes confidentiality provisions in its employment and settlement agreements with Dr. Goel as a legal basis for its improper threats.  Yet a substantial body of federal case law provides that such agreements cannot be used to justify withholding—or compelling others to withhold—relevant evidence from a party to litigation.  Florida Bar Rule 4-3.4(f), the federal cases discussed above, and 18 U.S.C. § 1512(b) all confirm a strong public policy that litigation should be a search for truth, and that parties must be free to learn about all facts and evidence relevant to a case.  That policy is thwarted when a party can silence a witness with threats or bribes.

This public policy would be illusory if former employers like LasikPlus could contract to purchase or coerce a witness's silence through nondisclosure agreements.  LasikPlus is not the first party that has tried to abuse confidentiality provisions to prevent its former employees from disclosing potentially damaging facts and evidence.  Courts repeatedly have held that it would violate public policy to allow a party to use a confidentiality agreement to prevent a former employee from sharing relevant information about a case with its adversary's counsel.

As an initial matter, Florida Bar Rule 4-3.4(f) and the ABA Model Rule upon which it is based expressly prohibit attorneys both from crafting contract provisions that would preclude a witness from sharing relevant knowledge about a case with an adversary, even informally, and from attempting to use pre-existing contract provisions to achieve that prohibited end.  It therefore is not surprising that state and federal courts in Florida do not allow a party to buy or otherwise compel a witness's silence about facts relevant to an ongoing lawsuit with a contractual confidentiality provision.  A court in this district compiled relevant cases to support its holding that a party cannot use a confidentiality provision to silence a witness.

> Citing public policy concerns, a number of courts have held that such confidentiality provisions will not be utilized as a shield to obstruct the discovery process. *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, 2000 WL 968818 (N.D.III.2000); *Key Pharma., Inc. v. ESI-Lederle, Inc.*,

13

> 1997 WL 560131 (E.D. Penn 1997); *Tribune Co. v. Purcigliotti,* 1996 WL 337277 (S.D.N.Y.1996); *Young v. State Farm Mut. Auto. Ins. Co.,* 169 F.R.D. 72 (S.D. W.V. 1996); *Kalinauskas v. Wong,* 151 F.R.D. 363 (N.D. Nev.1993); *Koprowski v. Wistar Institute of Anatomy and Biology,* 1993 WL 332061 (E.D.Penn.1993); *City of Hartford v. Chase,* 942 F.2d 130 (2nd Cir.1991); *[s]ee also Bank of Am. Nat. Trust & Savings Ass'n v. Hotel Rittenhouse Assocs.,* 800 F.2d 339 (3d Cir.1986).

*Del Monte Fresh Produce B.V. v. Ace American Ins. Co.*, 2002 WL 34702176, at *4 (S.D. Fla. Sept. 4, 2002) (case names abbreviated); *see also Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-2152, 2001 WL 36086590, at *1 (S.D. Fla. Jan. 31, 2001) (holding same). "This is particularly true when confidentiality provisions may have the effect of silencing witnesses with a settlement agreement where the facts of one controversy are relevant to another." *Id.* Florida state courts likewise do not allow a party to use a confidentiality agreement to obstruct discovery or testimony. "Settlement agreements which suppress evidence violate the greater public policy." *Scott v. Nelson,* 697 So.2d 1300, 1301 (Fla. 1st DCA 1997).

As the *Del Monte* court noted, federal courts outside of Florida enforce this same public policy. There are two seminal district court cases, and *Del Monte* cited both. *See* 2002 WL 34702176, at *4. In *Wendt v. Walden University, Inc.*, No. Civ. 4-95-467, 1996 WL 84668 (D. Minn. Jan. 16, 1996), a court rejected an employer's attempt to use settlement agreements to preclude former employees from testifying in a sexual harassment case brought by a co-worker, holding that "Defendants should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another." *Id.* at *2. Likewise, in *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993), the court held that a defendant "should not be able to conceal basic facts of concern to [plaintiff] in her case, and of legitimate public concern, regarding employment at its place of business" by prohibiting disclosures in a settlement agreement. It noted that encouraging settlement is an "important objective," but held that "settlement agreements which suppress evidence violate the greater public policy." *Id.*[13]

---

[13] Since *Wendt* and *Kalinauskas*, numerous other courts have issued similar rulings in civil cases. *See General Steel Domestic Sales, LLC v. Steel Wise, LLC*, No. 07-cv-01145, 2009 WL 185614 at *8 (D. Colo. Jan. 23, 2009) (holding that "courts … will not allow a confidentiality agreement to prevent discovery directed to witnesses who can testify to otherwise admissible factual matters"); *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, No. 99-C-214, 2000 WL 968818, at *5 (N.D. Ill. July 7, 2000) ("To permit parties to silence a witness through enforcement of settlement agreements would allow a defendant to continue a pattern of harmful behavior while being shielded from the legal system."); *McKnight v. Stein Mart, Inc.*, No. 95-0258, 1996 WL

Courts specifically have rejected attempts by parties like LasikPlus to use confidentiality agreements to silence former employees from disclosing relevant information to an adversary in informal discovery, such as interviews. Thus in *Chambers v. Capital Cities/ABC*, a district court held that a party could not use signed confidentiality agreements to preclude its adversary from conducting pre-deposition interviews of its former employees. 159 F.R.D. 441, 444-45 (S.D.N.Y. 1995). A district court likewise held in *Hoffman v. Sbarro, Inc.*:

> The non-disclosure agreement provides no support for the requested relief. To the extent that the agreement might be construed as requiring an employee to withhold evidence relevant to litigation designed to enforce federal statutory rights, it is void.

No. 97 CIV. 4484 (SS), 1997 WL 736703, at *1 (S.D.N.Y. 1997). This public policy has particular force where, as here, the party seeking to silence its former employees has been accused of illegal practices. "[A]greements obtained by employers requiring former employees to remain silent about underlying events leading up to disputes, or concerning potentially illegal practices . . . can be harmful to the public's ability to rein in improper behavior." *Chambers*, 159 F.R.D. at 444; *see also McGrane v. Reader's Digest Ass'n, Inc.*, 822 F. Supp. 1044, 1050-51 (S.D.N.Y. 1993). In short, LasikPlus may not rely on confidentiality agreements with Dr. Goel to prevent him from cooperating in discovery or testifying at trial.

### C.   Plaintiffs Are Entitled to Interview LasikPlus's Former Employees About LasikPlus's Practices Regarding Patient Reviews.

LasikPlus also is wrong when it insinuates that it is improper for Plaintiffs to speak with Dr. Goel. Plaintiffs have the right to interview LasikPlus's former employees.

> Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone. Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied, *e.g.*, compensation for his time and expertise or payment of reasonable expenses involved, and while the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak.

481079, *1 (E.D. La. Aug. 22, 1996) (following and quoting *Wendt*).

15

*Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) (citations omitted).  This right is not diminished when the witness is a party's former employee.

The Supreme Court of Florida established, as a matter of ethics, the right of a litigant to interview its adversary's former employees in *H.B.A. Management, Inc. v. Estate of Schwartz*, holding that the relevant ethics rule "neither contemplates nor prohibits an attorney's ex parte communications with former employees of a defendant employer."  693 So.2d 541, 546 (Fla. 1997).[14]  Accordingly, federal courts recognize a party's right to interview its adversary's former employees.[15]  The "ability to informally interview former employees of the Defendants would materially assist Plaintiffs' preparation of their case at both the summary judgment and trial stages and reduce the costs of litigation for both parties."  *Lang v. Reedy Creek Imp. Dist.*, 888 F. Supp. 1143, 1148 (M.D. Fla. 1995); *see also Frey v. Department of Health and Human Services*, 106 F.R.D. 32, 36 (E.D.N.Y. 1985) (holding that "it is essential to plaintiff's ability to fully prepare and present her case that [defendant's] employees who are potential witnesses be informally contacted so that she may ascertain whether their testimony may be helpful in her case").  As *Frey* noted, a contrary rule barring informal interviews of former employees—the result LasikPlus seeks through threats and a blanket confidentiality designation—endangers due process.  "To permit the [defendant] to barricade huge numbers of potential witnesses from interviews except through costly discovery procedures, may well frustrate the right of an individual plaintiff with limited resources to a fair trial and deter other litigants from pursuing their legal remedies."  *Frey*, 106 F.R.D. at 36.

---

[14] "According to the Florida Supreme Court, when contacting former employees there are only two restrictions counsel must consider—not intruding on the attorney client privilege and proceeding in accordance with Rule 4-4.3 if the former employee is otherwise unrepresented." *In re Banco Santos, S.A.*, No. 10-47543, 2014 WL 5655025, at * 9 (S.D. Fla. Bankr. Oct. 31, 2014).  In this case, neither restriction is at issue.  LasikPlus has not alleged that Dr. Goel participated in its attorney-client privileged communications when he worked for the company, and Plaintiffs have no interest in invading such matters.  Likewise, Dr. Goel is represented by his own attorney, Joy Einstein, who is fully apprised of this situation.

[15] Relatedly, Plaintiffs do not need LasikPlus's permission to interview its former employees.  "[N]othing prohibits Plaintiffs' counsel from contacting and interviewing witnesses who are former employees of Defendant without prior notification to and consent from Defendant's counsel."  *Howard v. Second Chance Jai Alai LLC*, No. 5:15-cv-200, 2016 WL 367844, at *3 (M.D. Fla. Jan. 29, 2016); *see also In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *7 (N.D. Fla. 1992) (holding that "class plaintiffs' campaign to have private investigators contact and interview defendants['] former employees without defendants' knowledge, consent, or participation" was appropriate).

Federal Courts of Appeals have reversed district courts for restricting a party's ability to interview its adversary's witnesses.  In *IBM Corp. v. Edelstein,* 526 F.2d 37 (2d Cir. 1975), a district court forbade defendant's counsel from interviewing plaintiff's witnesses unless the interview was transcribed and plaintiff's counsel was present.  The Second Circuit reversed, holding that such restrictions "not only impair the constitutional right to effective assistance of counsel but are contrary to time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *Id.* at 42.  In *Williams v. Rene,* 72 F.3d 1096 (3d Cir. 1995), the Third Circuit rejected a rule that would have required defense counsel to give notice before interviewing a plaintiff's treating physician because the rule "hinders settlement negotiations and trial preparation by restricting the gathering of relevant evidence in an informal fashion, thus requiring the more expensive and time-consuming procedures of a formal deposition." *Id.* at 1103.  And in *Gregory v. United States*, 369 F.2d 185 (D.C. Cir. 1966), the D.C. Circuit held that a prosecutor violated a defendant's right to a fair trial by instructing witnesses not to speak with the defendant's counsel unless he was present.  *Id.* at 188.  Although *Gregory* was a criminal case, the court made clear that the same rule applies in civil cases.  "A criminal trial, like its civil counterpart, is a quest for truth.  That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined." *Id.*

These cases make clear that it would interfere with Plaintiffs' right to due process for this Court to order Plaintiffs not to interview Dr. Goel.  LasikPlus through its threats has impaired Plaintiffs' ability to investigate their case the same way.  This Court therefore should grant Plaintiffs the relief they seek to remedy this impairment.

## IV.    The Relief Plaintiffs Seek Is Supported by Case Law and Tailored to Remedy LasikPlus's Wrongful Conduct.

In similar cases where a party like LasikPlus has tried to leverage confidentiality provisions to threaten a witness into silence, courts have awarded the kind of relief that Plaintiffs seek.  Courts have ruled that confidentiality provisions in employment and settlement agreements cannot be used to prevent a witness from disclosing facts relevant to an ongoing litigation.  *See, e.g., E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 745 (1st Cir. 1996) ("enjoining the utilization of settlement provisions that prohibit employees from assisting the EEOC in

17

investigating charges of discrimination").[16]  Likewise, courts have enjoined attorneys from instructing a client's former employees not to speak with opposing counsel, and ordered those attorneys to send a curative letter.  In *Davis*, where the Michigan Court of Appeals found that a plaintiffs' attorney had violated Michigan's analog to Rule 4-3.4(f), the Court ordered the attorney to send a curative letter drafted by the court on the attorneys' letterhead to the affected witnesses.[17]  530 N.W.2d at 180.

Consistent with these authorities, Plaintiffs ask this Court to order LasikPlus's counsel to send a curative letter to Dr. Goel, modeled on the letter that the Michigan Court of Appeals approved, and to any other witnesses counsel has threatened.  Plaintiffs ask that the letter state:

> I previously authored a letter to you on January 9, 2020 (the "January 9 Letter") regarding a court case brought by Vision Group Holdings and certain of its affiliates (collectively "VGH") against my client, LasikPlus. That case is pending before the United States District Court for the Southern District of Florida (the "Court").  The Court has entered an Order about my letter to you, and a copy of that Order is enclosed.
>
> The Court's order provides that you are free to speak with counsel for VGH concerning any matter relevant to VGH's claims against LasikPlus,

---

[16] *See also Del Monte*, 2002 WL 34702176, at *4; *Gutter*, 2001 WL 36086590, at *1; *Scott,* 697 So.2d at 1301; *Wendt*, 1996 WL 84668 at *2; *Kalinauskas*, 151 F.R.D. at 367; *General Steel*, 2009 WL 185614 at *8; *Marchese v. Sec'y, Dep't of the Interior*, No. CIV.A. 03-3082, 2004 WL 2297465, at *6 (E.D. La. Oct. 12, 2004); *Channelmark*, 2000 WL 968818, at *5; *McKnight*, 1996 WL 481079, at *1; *Chambers*, 159 F.R.D. at 444-45; *Hoffman,* 1997 WL 736703, at *1; *McGrane,* 822 F. Supp. at 1051.

[17] The text of the letter drafted by the court stated: "On May 12, 1993, I issued an open letter to Michigan physicians in the form of a press release.  I also wrote to you on May 13, 1993 concerning pending breast implant litigation.  Subsequently, the Wayne County Circuit Court, where all Michigan state court breast implant cases are pending, has entered an order, a copy of which is enclosed. As you will note, this order provides that defense attorneys are permitted to speak with physicians concerning any claim arising out of the silicone implant case filed by a patient who has signed a medical authorization for release of information.  The Court has also ruled that such patients and their attorneys may not request the physician to speak with a defense attorney only if the patient's attorney is also permitted to be present.  Any request from my office contained in any prior communication to you, to the effect that you should choose not to speak to a breast implant manufacturer's attorney unless I am present, is hereby withdrawn, pursuant to the foregoing orders of the court." *Davis*, 530 N.W.2d at 180.  The Court specifically ruled that the court-mandated letter did not violate the attorney's free speech rights because "it is not a violation of the First Amendment to impose certain restrictions on attorney speech in the context of litigation and in order to remedy ethical violations."  *Id.* at 181-82 (discussing *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1072-73 (1991)).  As the Michigan Court of Appeals noted, "*Gentile* recognized that membership in the bar is a privilege that comes with conditions," and one of those conditions is complying with the ethical rules that govern the practice of law.  *Id.*

including LasikPlus's practices regarding patient reviews. The Court has ruled that LasikPlus may not rely upon the confidentiality provisions in the employment and settlement agreements I referenced in my January 9 Letter to prevent you from speaking with VGH's counsel about the case or from testifying, or to retaliate against you for doing so. The Court also has ruled that LasikPlus may not retaliate, or threaten to retaliate, against you for speaking voluntarily with VGH's counsel or testifying in the case between VGH and LasikPlus.

Any demand, threat, or request from my office contained in any prior communication to you, to the effect that you should choose not to testify or decline to speak to an attorney for VGH about LasikPlus's practices regarding patient reviews is hereby withdrawn, pursuant to the foregoing orders of the court.

Finally, this Court has the authority to award Plaintiffs their attorneys' fees as a sanction for LasikPlus's and its counsel's unethical and improper attempts to silence witnesses and obstruct Plaintiffs' discovery in this case. A district court's inherent authority to impose attorneys' fees empowers a court to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Congress similarly empowered Courts to award attorneys' fees for such conduct in 28 U.S.C. § 1927.[18] Federal courts have exercised this authority where, as here, a party is forced to litigate issues to remedy ethical violations by its adversary's counsel. The Eighth Circuit in *Harlan* affirmed the imposition of monetary sanctions against a defense attorney in a medical malpractice case who violated "Model Rule 3.4(f)" by pressuring a doctor not to speak with the plaintiffs' counsel. *See* 982 F.2d at 1258. Likewise in *Banner v. City of Flint*, the Sixth Circuit affirmed an award of "fees and costs incurred by virtue of the ethical breaches upon which the sanctions were based." 99 F. App'x 29, 37 (6th Cir. 2004). In *Jones v. Illinois Central Railroad Company*, a district court imposed sanctions where a party's attorney improperly withheld relevant witness statements from discovery. No. 07-2073 D/P, 2011 WL 3862330, at *1 (W.D. Tenn. Aug. 14, 2011), *report and recommendation adopted*, No. 2:07-CV-2073, 2011 WL 3862321 (W.D. Tenn. Aug. 31, 2011). Indeed, at least one district court has ruled that a failure to impose sanctions for an obvious ethics violation "would be an abdication of the court's responsibility to address and appropriately deal with obvious violations of the Rules of

---

[18] 28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Professional Conduct and ethical canons." *Terrebonne, Ltd. of California v. Murray*, 1 F. Supp. 2d 1050, 1074 (E.D. Cal. 1998).  In short, numerous courts have recognized the propriety of the relief Plaintiffs seek to remedy the specific kind of unethical and improper interference with discovery and the availability of witnesses that LasikPlus committed in this case.

## CONCLUSION

For these reasons, Plaintiffs request that the Court enter an Order:

1.      Holding that the confidentiality provisions in the agreements attached to this motion as Exhibit C do not preclude Dr. Goel from speaking voluntarily with Plaintiffs' counsel about this case or testifying in this case;

2.      Ordering LasikPlus and its counsel to disclose all communications they have had with persons Plaintiffs identified as potential witnesses in their Initial Disclosures, other than current LasikPlus employees or agents, since Plaintiffs served those Initial Disclosures on January 6, 2020;

3.      Ordering LasikPlus and its counsel to stop threatening or requesting witnesses, other than current LasikPlus employees and agents, not to speak voluntarily with or disclose relevant information about this case to Plaintiffs;

4.      Ordering counsel for LasikPlus to send a curative letter from the same counsel who threatened Dr. Goel, and on the same letterhead, in the form described above;

5.      Directing counsel for LasikPlus to send a similar curative letter to every former employee or other witness (other than a current LasikPlus employee or agent) whom LasikPlus has threatened, asked, or told to not speak with Plaintiffs' counsel or testify in this case;

6.      Directing Defendants to pay to Plaintiffs the attorneys' fees Plaintiffs had to incur in obtaining a copy of the January 9 Letter, seeking to resolve this dispute, and filing this Motion; and

7.      Granting such other and further relief that the Court may decide.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for the parties have conferred about this matter, and counsel for LasikPlus has not agreed to any of the relief sought herein.  LasikPlus denies that its conduct is improper or wrongful.

Dated: March 25, 2020

Respectfully submitted,

*/s/ Jennifer Ruiz*
Jennifer Ruiz, Esq. (Bar No. 0967173)
Ingo Burghardt (Bar No. 1021393)
Alison Rogers (Bar No. 124498)
WEISBROD MATTEIS & COPLEY PLLC
500 E. Broward Blvd.
Suite 1700
Fort Lauderdale, FL 33394
Tel: (954) 947-8607
jruiz@wmclaw.com
iburghardt@wmclaw.com
arogers@wmclaw.com

William E. Copley (*pro hac vice*)
Saul Cohen (*pro hac vice*)
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Ave. NW
Suite 600
Washington, D.C. 20036
Tel: (202) 499-7900
wcopley@wmclaw.com
scohen@wmclaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2020, I caused a copy of the foregoing to be served electronically on all parties via the CM/ECF system.

*/s/ Jennifer Ruiz*